IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARMELITA HIGGS-COTTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 06 C 5716 |
| ) | |
| NORMAN Y. MINETA, Secretary of the ) | |
| United States Department of Transportation, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

From 1990 through 2004, *pro se* plaintiff Carmelita Higgs-Cotton was employed by the Federal Aviation Administration as an Air Traffic Control Specialist. The FAA, which is an agency of the Department of Transportation, terminated her employment in 2004. Higgs-Cotton has sued the Secretary of Transportation for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-16.

The Secretary moved to dismiss Higgs-Cotton's complaint for failure to state a claim on the ground that Higgs-Cotton's lawsuit was untimely. When the Secretary's motion was presented in court on February 20, 2007, the Court explained to Higgs-Cotton that in response, she should provide any evidence she had to support a contention that her lawsuit was timely or to explain why it was filed late. The Court neglected, however, to advise her that it was converting the Secretary's motion to a motion for summary judgment. On June 19, 2007, the Court formally converted the Secretary's motion to a motion for summary judgment and gave Higgs-

Cotton an additional opportunity to submit evidence in opposition to the motion. For the reasons stated below, the Court grants summary judgment in favor of the Secretary.

**Facts**

Because the Secretary has moved for summary judgment, the Court views the facts in the light most favorable to Higgs-Cotton, drawing reasonable inferences in her favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

In December 2001, Higgs-Cotton began working at the DuPage Air Traffic Control Tower, a control tower that operates without radar, requiring controllers to direct flights by sight. Higgs-Cotton worked under a medical restriction that required her to wear eyeglasses while working, though she contends her vision is actually 20/20 and she does not need glasses.

Higgs-Cotton alleges that on several occasions in April 2003, she received reprimands for not wearing her eyeglasses while on the job; she says that she was wearing them on her head and may have neglected to use them as mandated, because she did not really need them to see. Around the same time, she alleges, she reported to management that other workers repeatedly engaged in racist conversation and made false complaints against her for racial reasons. According to Higgs-Cotton, management officials dismissed her complaint, telling her that they could not force her coworkers to like her.

After she complained, Higgs-Cotton alleges, she received additional reprimands for failing to wear her eyeglasses. She says that on each occasion, her eyeglasses were off her eyes for only a few moments and that she put them back on her eyes when reminded to do so.

On December 23, 2003, Higgs-Cotton made another complaint of race discrimination. She had meetings with management and an equal employment opportunity ("EEO") counselor, but her complaint was not resolved. Within a few days, on January 22, 2004, Higgs-Cotton was

given a letter of proposed removal from employment for failure to wear her eyeglasses and was placed on administrative leave. She was thereafter terminated.

With the assistance of an attorney, Higgs-Cotton challenged her removal before the Merit System Protection Board, disputing contentions that she had violated medical restrictions and alleging that she had been retaliated against for making her EEO complaint. On November 3, 2004, an administrative law judge issued a decision rejecting Higgs-Cotton's contentions and upholding her removal. The initial decision, which was mailed to both Higgs-Cotton and her attorney, notified Higgs-Cotton of her options to seek review before the full Board or with the Equal Employmetn Opportunity Commission and advised her that either way, she had to file the necessary documents within thirty days.

Higgs-Cotton filed a petition seeking review by the Board, which was denied in a final order dated June 2, 2005. The decision was mailed to both Higgs-Cotton and her attorney. It advised her of her options: she could seek further review of her discrimination claims by filing an appeal with the EEOC or by filing suit in federal district court, within thirty days after her receipt of the order. The decision also advised Higgs-Cotton that she could seek further review of any claims other than her discrimination claims by appealing to the United States Court of Appeals for the Federal Circuit. Higgs-Cotton does not contend that she did not receive the Board's order.

Despite what she was advised in the Board's order, Higgs-Cotton did not file suit in district court and did not seek review by the EEOC within thirty days after her receipt of the order. Rather, she waited over a year, until August 2, 2006, before seeking review by the EEOC. On September 19, 2006, the EEOC denied her petition for review on the ground that it had been untimely filed, with no adequate justification for an extension. In its decision, the EEOC

notified Higgs-Cotton of her right to obtain further review by filing a civil lawsuit within thirty calendar days after her reciept of the decision. The EEOC decision also advised her that she could ask the court to appoint counsel for her but that this would not extend the deadline for filing suit. Higgs-Cotton does not contend that she did not receive the EEOC's decision.

Higgs-Cotton did not file suit within thirty days after her receipt of the EEOC's decision. Rather, she filed a *pro se* complaint in this Court on November 22, 2006, just over two months after the EEOC issued its decision. Higgs-Cotton does not dispute that this was well over thirty days after she had received the decision.

Higgs-Cotton states that her delays in filing for EEOC review and in filing suit in this Court are attributable to financial difficulties resulting from the EEOC's actions, which forced her into bankruptcy and made it impossible for her to afford to retain counsel to pursue EEOC and judicial review.[1] She also contends that she was unaware of the option to file suit as a *pro se* litigant until September 2006, when she met with her congressional representative to seek assistance.

## Discussion

The Secretary is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, . . . show that there is no genuine issue as to any material fact and that the moving party is entitle to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering the Secretary's motion, the Court views the facts

---

[1] It is unclear to the Court whether Higgs-Cotton disclosed her claim during the course of her bankruptcy case; if not, then she would be estopped from pursuing her claim by way of a civil suit. *See, e.g., Cannon-Stokes v. Potter,* 453 F.3d 446 (7th Cir. 2006). The Secretary, however, has not raised this issue.

4

in the light most favorable to Higgs-Cotton and draws reasonable inferences in her favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

The Secretary contends that Higgs-Cotton's appeal to the EEOC and her suit filed in this Court were each untimely, thus barring her claim. Before filing a lawsuit under Title VII, a plaintiff must exhaust administrative remedies in a timely fashion. *See, e.g., Ester v. Principi,* 250 F.3d 1068, 1071 (7th Cir. 2001); *Gibson v. West*, 201 F.3d 990, 992-93 (7th Cir. 2000). After exhausting administrative remedies, a plaintiff must likewise file suit in court in a timely fashion. *See Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 91 (1990). These requirements are in the nature of statutes of limitation and, as such, are subject to the equitable doctrines of tolling, estoppel, and waiver. *See id.* at 95-96; *Ester,* 250 F.3d at 1071.

In this case, it is undisputed that Higgs-Cotton's EEOC appeal and her suit in this Court were filed outside the time limits imposed by law. As indicated earlier, Higgs-Cotton asks the Court to excuse her delays due to her *pro se* status and her contention that she was unable to retain counsel. This is an insufficient basis to apply the doctrine of equitable tolling. *See, e.g., Montenegro v. United States,* 248 F.3d 585, 594 (7th Cir. 2001) (*pro se* status combined with limited legal knowledge and ability insufficient for equitable tolling), *overruled in part on other grounds, Ashley v. United States,* 266 F.3d 671 (7th Cir. 2002); *United States v. Marcello,* 212 F.3d 1005, 1010 (7th Cir. 2000). *See generally, Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151-152 (1984) (tolling might be justified when "a claimant has received inadequate notice, . . . a motion for appointment of counsel is pending[,] the court has led the plaintiff to believe that she had done everything required of her, . . . [or] affirmative misconduct on the part of a defendant lulled the plaintiff into inaction"; indicating that *pro se* status by itself is

insufficient); *Johnson v. McCaughtry,* 265 F.3d 559, 566 (7th Cir. 2001) (lawyer's mistake insufficient to justify equitable tolling).

**Conclusion**

For reasons stated above, the Court grants defendant's motion to dismiss, which the Court previously converted to a motion for summary judgment [docket no. 12]. The Clerk is directed to enter judgment in favor of the defendant.

```
                                    _____
                                          MATTHEW F. KENNELLY
                                          United States District Judge
```

Date: July 9, 2007